County Court, Cayuga County, December, 1900. Unreported.

In the Matter of Application of EDWIN H. ADRIANCE to Revoke the Liquor Tax Certificate of WILLIAM G. RAMAGE.

*F. D. Wright,* for petitioner.

*F. M. Leary,* for respondent.

UNDERWOOD, Co. J.: It is contended on the part of the petitioner that the application presented to the county treasurer and upon which the liquor tax certificate was issued, contained false statements for which it should be revoked.

The application states that there are but nine buildings used exclusively as dwellings within two hundred feet of the entrance of the place where liquor is to be sold. And in describing these buildings the application refers to numbers 7 and 9 Paddock Block as being two of the buildings included to make up the total of nine.

It is claimed by petitioner that the Paddock Block is to be treated as if it were six distinct buildings instead of but two. This block is comprised of two portions, one of brick and the other of wood, adjoining each other, and both facing Franklin street, the entire property being owned by one person who rented various portions of the block to different individuals as flats for residential purposes.

The brick building contained two flats on the ground floor, each with its own separate street entrance, two flats on the second floor, each also having its separate street entrance, and two flats on the third floor having a street entrance in common, and which by means of a common staircase led to these two flats.

Each of these six flats was separate and distinct from the others and there was no communication between any of them without passing outdoors, except that between the two flats on the third floor it was possible to pass from one to the other across the landing at the head of the stairs, and there was also a door connecting the two flats, which the tenants sometimes made use of although against the landlord's direction.

The entrance to the easterly flat on the second floor of the brick building was through a street door and stairway in the adjoining wooden building—there being an opening in the wall of the brick building from this passage or entrance into the flat.

This street entrance and the street entrances of all the other flats referred to were within two hundred feet of the entrance to the defendant's saloon.

From the plans submitted and the description of this building given by the witnesses, it is evident that the brick portion of this block is really but one building. While the flats are disconnected from each other, as stated, there are no interior partitions carried up from cellar to roof dividing an entire portion of the block from another. An attempt to convey any distinct portion of the block would involve a reconstruction of the interior.

So far as this block is concerned I think, therefore, that the application conformed to the facts.

It is next claimed that the application is false in representing that the applicant had the consent of Mrs. Maria L. Young, who owned two of the nine houses referred to in the application.

Attached to the application, which appears to have been verified on the 13th day of July, 1900, appears a consent in the form required by this statute signed and acknowledged by Maria L. Young on said 13th day of July.

This application was not presented to the county treasurer until October 1, 1900. Meanwhile and on July 21, 1900, Mrs. Young caused to be served on defendant and also on the county treasurer a notice in writing signed and acknowledged by her, that she revoked and recalled the consent theretofore given by her.

The question here presented is whether she could revoke her consent once given. It does not appear that any consideration was paid Mrs. Young for her consent, and I am of the opinion that she could revoke her consent at any time before it was presented to and acted upon by the county treasurer.

No case is cited where this precise question is passed upon with reference to the liquor tax law, but, under the provisions of the town bonding acts formerly in force in this State, it was requisite that the consents in writing of a majority of the taxpayers to the proposed bonding should be obtained.

The fact that such majority had consented was to be determined in some cases by the county judge—in other cases by the assessors.

Under these statutes it is well settled that the taxpayers might revoke or withdraw a consent, at any time prior to the determination by the county judge or assessors, as the case might be. *People ex rel. Irwin* v. *Sawyer,* 52 N. Y. 296; *People ex rel. Yawger* v. *Allen,* 52 N. Y. 541.

These cases seem to me decisive of the question here presented.

And I, therefore, hold and decide that Mrs. Young's consent was revoked and that, in fact, when the application was filed the applicant had the consent of the owners of but four of the eight buildings occupied exclusively as dwellings within the prescribed distance.

While his application was true at the time he swore to it, on the 13th day of July, it did not disclose the true condition of things on the day when the application was presented and the certificate issued.

It seems to me that the presentation to the county treasurer of the sworn application—the request that thereupon he issue the tax certificate .necessarily imply and involve a representation that the facts, as asserted in the application then exist. If this is not so, then a liquor tax certificate might be obtained on an application and consents six months or a year old, although several new houses had meantime been built in the vicinity, the owners of which would not consent, and without whose consent, the requisite two-thirds would be lacking.

For the reasons stated the prayer of the petition is granted with costs.